37868. BARTOW COUNTY BANK v. BARTOW COUNTY
BOARD OF TAX ASSESSORS et al.
37869. CITIZENS & SOUTHERN BANK OF BARTOW
COUNTY v. BARTOW COUNTY BOARD OF TAX
ASSESSORS et al.
37870. FIRST NATIONAL BANK OF CARTERSVILLE
v. BARTOW COUNTY BOARD OF TAX ASSESSORS
et al.

HILL, Chief Justice.

These cases are now before us on remand from the United States Supreme Court. When these cases originally appeared before this court, we held that the Georgia bank share tax act, then Code Ann. § 91A-3301, later OCGA § 48-6-90 (repealed by Ga. L. 1983, p. 1350), was not rendered unconstitutional by the fact that it provided for taxation of bank shares based on the net worth of the bank without subtracting the value of federal securities owned by the bank. *Bartow County Bank v. Bartow County Board of Tax Assessors,* 248 Ga. 703, 711 (285 SE2d 920) (1982). An appeal was docketed in the United States Supreme Court. Id., 50 USLW 3824 (April 13, 1982).

Subsequently, the United States Supreme Court rendered its decision in American Bank &c. Co. v. Dallas County, 463 U. S. ——

(103 SC 3369, 77 LE2d 1072) (1983). The Court held that the Texas bank share tax, which was calculated by use of an equity capital formula,[1] violated Rev. Stat. § 3701, 31 USC § 742, as amended in 1959 (Pub. L. 86-346),[2] because the tax considered the value of United States obligations held by the banks. Since Rev. Stat. § 3701, 31 USC § 742, as amended, prohibits such consideration, directly or indirectly, in the computation of the tax, the state tax violated the supremacy clause. U. S. Const., Art. VI, Cl. 2. The U. S. Supreme Court then vacated the judgment in *Bartow County Bank,* supra, and remanded the case to this court for reconsideration in light of its opinion in American Bank &c. Co., supra. *Bartow County Bank,* supra, —— U. S. —— (103 SC 3563, 77 LE2d 1402) (1983).

1. As we explained in *Bartow County Bank,* supra, 248 Ga. at 704, our bank share tax "authorizes as deductions from the fair market value of the shares (net worth of the bank) real estate taxed separately, investments in subsidiary banks taxed under the act, undistributed earnings of other subsidiaries subject to Georgia corporate taxes, and reasonable capital reserves. . . . The act does not provide for deduction of U. S. government securities." Therefore, under American Bank &c. Co., supra, it is clear that Georgia's bank share tax act, like that of Texas, as the Bartow County Board of Tax Assessors and the Attorney General of the State of Georgia now concede, is unconstitutional unless it be construed so that the value of federal obligations which the banks hold not be considered, directly or indirectly, in computing the tax.

While our statute admittedly does not provide by its terms for the exemption of federal obligations, neither does it expressly provide that federal obligations shall not be exempted. Prior to the United States Supreme Court decision in American Bank &c. Co., supra, we construed the statute so as not to allow such exemption on the premise, based upon U. S. Supreme Court decisions rendered prior to 1959, that such a statute would be constitutional. On remand,

---

[1] As described by the U. S. Supreme Court, the equity capital formula involves "determining the amount of the bank's capital assets, subtracting from that figure the bank's liabilities and the assessed value of the bank's real estate, and then dividing the result by the number of shares." Id., 103 SC at 3374 (51 USLW at 5183-5184).

[2] Rev. Stat. § 3701, 31 USC § 742, as amended, provides: "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes."

we must reconsider that construction in light of the decision in American Bank &c. Co., supra, that such a statute, as so construed, is now unconstitutional.

It has long been the law in Georgia "that Acts of the Legislature are not only presumed to be constitutional, but that the authority of the Courts to declare them void, will never be resorted to, except in a clear and urgent case. . . ." *Boston & Gunby v. Cummins,* 16 Ga. 102, 105 (1854). Moreover, statutes are to be construed so as to be constitutional whenever possible. *Freeman v. Ryder Truck Lines,* 244 Ga. 80, 83 (259 SE2d 36) (1979). This rule is related to the rule of construction that: "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. . . ." OCGA § 1-3-1(a) (Code Ann. § 102-102). It follows that, because the General Assembly is presumed to intend all laws it enacts to be constitutional, the courts will choose a constitutional construction which realizes that intent. Thus we conclude that we should construe the bank share tax, if possible, so as to render it constitutional (i.e., so as to avoid violating 31 USC § 742, supra), rather than declare the entire share tax act unconstitutional. See *Columbia Bank for Cooperatives v. Blackmon,* 232 Ga. 344, 347 (206 SE2d 424) (1974); *City Council of Augusta v. Mangelly,* 243 Ga. 358, 363 (254 SE2d 315) (1979).

2. Having concluded that the banks' federal obligations cannot "be considered, directly or indirectly, in the computation of the tax," 31 USC § 742, we confront the problem of how the share tax is to be calculated. The Attorney General argues for a proportionate method of deduction; e.g., determine the extent to which federal obligations are represented in the bank's assets, and then deduct the exempt federal obligations to the extent that they are represented in net worth (and by which the share tax is measured). The banks, on the other hand, argue for an absolute deduction. Alternatively put, they argue that the statutory command that federal obligations not "be considered, directly or indirectly, in the computation of the tax," means that for state tax purposes those of the bank's assets which are represented by federal obligations should be deducted in full, notwithstanding the fact that only a portion of the federal obligations are attributable to net worth. We disagree because we deal here with a value tax measured by net worth, rather than by total assets. The law commands that we exclude federal obligations from the tax base, which is to say, that we exclude federal obligations from net worth to the extent that they are represented therein.

The nature of a balance sheet is such that so much of a bank's assets as consist of federal obligations are represented by an equivalent amount of liabilities (resulting in those assets not being taxed) and net worth (resulting in those assets being taxed). Thus the

proportionate deduction method, which we adopt, affords deduction of federal obligations to the full extent they are represented in net worth.[3]

The statute commands that federal obligations not be taxed directly (as in a tax assessed on a federal obligation), or indirectly (as in a tax assessed on a share in a bank the value of which includes federal obligations). But we agree with the Attorney General that it does not mean that the value of the federal obligations need be or should be deducted in full from the bank's net worth. Rather, allowing a deduction from the bank's net worth of the percentage of assets attributable to federal obligations fully insulates the federal obligations from the tax.[4] Yet while such deduction fully insulates the federal obligations from the tax — as the law requires — it does so without insulating the bank's taxable assets at the same time. While not identical, the banks' argument is similar to that of the unsuccessful insurance company in United States v. Atlas Life Ins. Co., 381 U. S. 233, 251 (85 SC 1379, 14 LE2d 358) (1965), because it can be said of both that the argument "is tantamount to saying that those who purchase exempt securities instead of taxable ones are constitutionally entitled to reduce their tax liability and to pay less tax per *taxable* dollar than those owning no such securities." Id. at 251 (emphasis supplied).

The banks rely on two arguments: first, that the fact that under the statute the value of a bank's real estate holdings is deducted from net worth mandates identical treatment for federal obligations;[5] and second, that the opinion in Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113 (56 SC 31, 80 LE 91) (1935), stands for the proposition that a pro rata deduction will not suffice. However, neither argument is controlling.

Code Ann. § 91A-3301 does provide for the deduction of real estate which is taxed separately from net worth. But the fact that it does so does not mean that that is the only method which will insulate the real estate from taxation under Code Ann. § 91A-3301. Rather it is simply the method the General Assembly chose. Nor does it follow

---

[3] We need not here decide whether those banks which can prove that federal obligations were actually purchased from capital stock or surplus are entitled to an absolute deduction from assets or net worth because the banks have not as yet made such showing (other than in hypothetical examples).

[4] This method of ascertaining the tax is not foreclosed by American Bank &c. Co., supra. See footnote 10 of that decision.

[5] The banks presumably rely upon the deduction for real estate rather than the deduction for investments in subsidiary banks, etc., because the banks in these cases have no such investments.

that the General Assembly would choose the same method to exempt federal obligations. The real estate deduction is only for real estate which is taxed separately; exempt federal obligations are, of course, not taxed separately.[6]

In Schuylkill Trust Co., 296 U. S. 113, supra, the Supreme Court dealt with a Pennsylvania tax statute which purported to tax the shares of trust companies rather than their corporate assets. But the act allowed the Trust Company to deduct from its net assets either directly or by means of a "proportional method of deduction" so much of its assets as were represented by shares of Pennsylvania corporations already taxed or exempt from tax. Id., 296 U. S. at 117. It did not allow a like exemption for federal obligations. Thus, by allowing certain deductions, but not federal obligations, the burden of the tax fell more heavily on the federal obligations. The Court first found that the act therefore discriminated against federal obligations, not because of the proportional method of deduction, but because of the inclusion of federal obligations in the tax base after the deduction of other securities. 296 U. S. at 120.

Next, the Court dealt with the Schuylkill Trust Company's ownership of shares of stock of the Philadelphia National Bank. These shares had already been taxed to the Trust Company. Id., 296 U. S. at 121. Pennsylvania had elected to exempt certain shares of stock of Pennsylvania corporations because they had been taxed, but it failed to exempt shares of the Philadelphia National Bank which also had been taxed. The Court held that the state was bound to exempt National Bank shares. 296 U. S. at 123. The Court did not focus on the proportional method of deduction (other than to find that the question as to the National Bank shares had been raised for its review).

The banks argue that the Schuylkill Trust decision is controlling because the National Bank shares had been afforded proportionate deduction treatment and this was disallowed by the Court. On the contrary, the National Bank shares had been afforded no deduction at all. See Commonwealth v. Schuylkill Trust Co., 315 Pa. 429 (173 A. 309, 310) (1934), reversed, 296 U. S. 113 (1935); Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 509 (58 SC 295, 82 LE 392) (1938).

Applying the proportionate deduction method to the appellant Citizens and Southern Bank of Bartow County (which deducted its federal securities in full), its total assets of $20,463,522 for the year

---

[6] See Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 514 (58 SC 295, 82 LE 392) (1938).

1979 included $1,995,393 in federal securities. Thus its federal securities represented 9.75% of its assets. Hence, 9.75% of its net worth is represented by federal securities. The bank therefore is entitled to reduce its net worth ($2,082,488) by 9.75% ($203,043) so as to remove from the tax base so much of its net worth as is represented by federal securities. Its deductions would then be as follows:

| | |
|---|---:|
| Deduction of federal securities | $ 203,043 |
| Real estate taxed separately | 1,284,943 |
| Reasonable capital reserves | 82,000 |
| One-half of the principal or GHEAC loans | 4,895 |
| Total deductions | $1,574,881 |

Subtracting its total deductions ($1,574,881) from its net worth ($2,082,484), leaves $507,607 as the taxable share value. Dividing the taxable share value by the number of outstanding shares provides the taxable value of each share.

The foregoing computation removes from the tax base (net worth) so much of the net worth (tax base) as includes federal securities, thereby excluding, as required by 31 USC § 742, supra, such securities from consideration in the computation of the tax.

*Judgment reversed. Cases remanded for further proceedings not inconsistent with this opinion. All the Justices concur, except Marshall, P. J., disqualified.*

DECIDED JANUARY 4, 1984.

*Warren Akin, William Morgan Akin,* for appellant (case no. 37868).

*Alston & Bird, G. Conley Ingram, Michael G. Wasserman, John L. Coalson, Jr.,* for appellant (case no. 37869).

*Hansell & Post, Charles T. Zink, Trammell Newton, Paul Oliver,* for appellant (case no. 37870).

*Nelson & Bradley, G. Carey Nelson, Stephen R. Bradley, Michael J. Bowers, Attorney General, James C. Pratt, Assistant Attorney General,* for appellees.

*William P. Trotter, James F. Grubiak, Walter Edwin Sumner, W. Stell Huie, C. Wilson Dubose, Trammell Newton,* amici curiae.