[No. S033257. Jan. 23, 1995.]

ROSS BEWLEY et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Richard Finn and Joyce E. Hee, Deputy Attorneys General, for Defendant and Appellant.

Nossaman, Guthner, Knox & Elliott, Stanley S. Taylor III, Claude M. Stern, Patrick J. Richard, Michael G. Thornton and Kurt W. Melchior for Plaintiffs and Respondents.

## OPINION

**KENNARD, J.**—A federal statute exempts stocks and obligations of the United States government from state taxation. (31 U.S.C. § 3124(a) [hereafter section 3124(a)].) The federal statute prohibits "each form of taxation that would require the [federal] obligation, the interest on the obligation, or both, to be considered in computing a tax . . . ." We granted review in this case to determine whether section 3124(a) prohibits California from imposing state income tax on shareholder dividend income derived from repurchase agreements involving federal securities.

After this court had heard oral argument in this case, the United States Supreme Court decided *Nebraska Dept. of Revenue* v. *Loewenstein* (1994) __ U.S. __ [130 L.Ed.2d 470, 115 S.Ct. 557], holding that section 3124(a) does not exempt from state taxation income derived from repurchase agreements involving federal securities.[1] The parties agree that this holding is dispositive of the issue on which we granted review. Accordingly, we reverse the judgment of the Court of Appeal insofar as it held that section 3124(a) exempts repurchase agreement income from state taxation.

Because the judgment of the superior court in this case is based on a summary adjudication and neither the parties nor the trial court nor the Court of Appeal has addressed a separate challenge to the tax raised by the complaint, we must remand this matter for further proceedings.

I

Plaintiff Trust for Short-Term United States Government Securities (hereafter Trust) is a federally regulated mutual fund that invests exclusively in federal government securities and repurchase agreements involving such securities. Plaintiffs Ross and Marilyn Bewley own shares in the trust.

In 1987, the Bewleys received dividends from the Trust, reported the dividends as taxable income, and paid income tax on the dividends. In 1989, the Bewleys filed a claim for refund with defendant Franchise Tax Board (hereafter Board), which denied the claim. The Bewleys and the Trust then filed a complaint in the San Francisco Superior Court for refund of taxes and for a declaratory judgment. The first two causes of action in the complaint sought refunds on the grounds that the imposition of the state income tax violated section 3124(a), the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), and the provision of the California Constitution recognizing the United States Constitution as the supreme law of the land (Cal. Const., art. III, § 1).

After the Board answered the complaint, the Bewleys and the Trust moved for summary judgment, and, in the alternative, for summary adjudication of issues. The trial court denied the motion for summary judgment, but granted the motion for summary adjudication as to the first two causes of action. The

---

[1]This case was argued before this court on November 7, 1994. After the United States Supreme Court decided *Nebraska Dept. of Revenue* v. *Loewenstein, supra,* __ U.S. __ [130 L.Ed.2d 470, 115 S.Ct. 557], on December 12, 1994, we requested and received supplemental briefs from the parties concerning the effect of the high court's decision on this case.

parties then stipulated to dismissal of the remaining causes of action and to entry of judgment for plaintiffs on the first two causes of action. The dismissals and judgment were entered accordingly, and the Board appealed the judgment.

The Court of Appeal affirmed. Citing its previous decision in *Brown* v. *Franchise Tax Bd.* (1987) 197 Cal.App.3d 300 [242 Cal.Rptr. 810], the court held that section 3124(a) exempted from state taxation all distributions of income originating in federal securities regardless of whether the mutual fund itself owned the federal securities. We granted the Board's petition for review.

## II

Repurchase agreements, commonly known as "repos," sound esoteric and can be quite complicated. They are, however, in essence nothing more than financing arrangements by which one party provides funds to another for a short period of time. There are two parties to a repurchase agreement: one has money to lend, the other needs cash and has securities. The repurchase agreement itself consists of two transactions that are agreed to simultaneously, but are performed at different times: (1) the seller-borrower agrees to transfer securities to the buyer-lender in exchange for cash; and (2) the seller-borrower agrees to repurchase the securities from the buyer-lender at the original price plus "interest" on a specified future date or upon demand. (See, e.g., *Nebraska Dept. of Revenue* v. *Loewenstein, supra*, __ U.S. at p. __ [130 L.Ed.2d at p. 475, 115 S.Ct. at p. 560]; *Securities & Exch. Com'n* v. *Miller* (S.D.N.Y. 1980) 495 F.Supp. 465, 467; *Matter of Bevill, Bresler & Schulman Asset* (Bankr.D.N.J. 1986) 67 Bankr. 557, 566-567; Note, *Lifting the Cloud of Uncertainty Over the Repo Market: Characterization of Repos as Separate Purchases and Sales of Securities* (1984) 37 Vand. L.Rev. 401, 403; see generally, Note, *The Characterization of Repurchase Agreements in the Context of the Federal Securities Laws* (1987) 61 St. John's L.Rev. 290.)

The repurchase agreements here in issue were created and are governed by a "Dealer Master Repurchase Agreement" (Agreement). The Agreement's most relevant provisions are: (1) the seller-borrower will sell to the Trust securities with a market value equal to the price agreed to by the parties (the Sale Price) for delivery to a designated custodian bank; and (2) the seller-borrower will repurchase the securities on a date fixed by the parties or upon demand "at the Sale Price plus interest at the agreed upon interest rate ('Interest Rate') . . . ."

The Agreement further provides that the seller-borrower retains the right to the interest paid by the issuer of the securities (the United States

government). Any interest received by the Trust before the securities are repurchased by the seller-borrower must be paid by the Trust, as soon as it is received, to the seller-borrower. Any principal, interest and other sums paid by the issuer and not previously paid by the Trust to the seller-borrower must be paid to the seller-borrower by the Trust at the time of repurchase of the securities by the seller-borrower.[2]

Under the Agreement, the seller-borrower may, before the date fixed for repurchase or before a demand for repurchase has been made by the Trust, repurchase the securities and substitute other securities of equal value.[3] If the market value of the securities falls below the level required by the Agreement, the Trust may require the seller-borrower to deposit "cash collateral" or additional securities sufficient to make up the difference.

In the event the seller-borrower defaults, the Trust may sell the securities or register the securities in its name and apply any cash collateral to the amount owed by the seller-borrower. If the securities are insufficient to satisfy the seller-borrower's obligation to the Trust at the time of default, the seller-borrower is liable for the difference.

### III

Section 3124(a) provides: "Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax . . . ." The exemption extends to state taxes that either directly or indirectly consider the federal obligation in computing the tax. (*First National Bank* v. *Bartow Cty. Tax Assessors* (1985) 470 U.S. 583, 585, fn. 1 [84 L.Ed.2d 535, 538, 105 S.Ct. 1516]; H.R.Rep. No. 97-651, 97th

---

[2]The Agreement is confusing because it uses the word "interest" to mean two different things. It refers to both interest paid by the issuer of the securities and the interest paid by the seller-borrower at the time of repurchase of the securities. The two are not the same, however. The "interest" in the phrase "Sale Price plus interest" is the amount that the parties have negotiated and agreed will be paid by the seller-borrower to the Trust at the time of repurchase of the securities by the seller-borrower. It is the premium paid to the Trust at the time of repurchase in excess of the amount of cash the Trust originally provided to the seller-borrower. It is not the "interest" paid on the securities by the United States government, the issuer of the securities. To avoid the confusion inherent in the Agreement's use of the term "interest" to refer to both interest paid by the issuer on account of the securities and to sums paid in excess of the Sale Price at the time of repurchase, we will refer to the interest on the obligations paid by the issuer as "interest" and to the premium paid at the time of repurchase as "income." Because the amount of interest paid is set by the issuer, but the income is agreed to by the parties, the interest on the securities and the income from the repurchase agreement are separate and do not necessarily correlate.

[3]No provision in the Agreement allows the Trust to substitute securities.

Cong., 2d Sess., p. 94 (1982), reprinted in 1982 U.S. Code Cong. & Admin. News, p. 1988.)[4]

On December 12, 1994, the United States Supreme Court in *Nebraska Dept. of Revenue* v. *Loewenstein, supra*, __ U.S. __ [130 L.Ed.2d 470, 115 S.Ct. 557] (hereafter *Loewenstein*), held that section 3124(a) does not prohibit states from taxing income derived from repurchase agreements involving federal securities. In *Loewenstein*, which involved the state taxation of dividend income from the same trust that is a plaintiff here, the court concluded that the income from the repurchase agreements was not interest on "obligations of the United States Government." (*Id.* at p. __ [130 L.Ed.2d at p. __, 115 S.Ct. at p. 560].)

The high court based its conclusion in *Loewenstein* on four features of the repos at issue in that case. "First, at the commencement of a repo, the Trusts pay the Seller-Borrower a fixed sum of money; at the repo's termination, the Seller-Borrower repays that sum with 'interest.' As explained above, this repo interest bears no relation to either the coupon interest paid or the discount interest accrued on the federal securities during the term of the repo.

"Second, if the Seller-Borrower defaults on its obligation to pay its debt, the Trusts may liquidate the federal securities. But like any lender who liquidates collateral, the Trusts may retain the proceeds of liquidation only up to the amount of the debt plus expenses; any excess must be paid to the Seller-Borrower. Moreover, if the proceeds are insufficient to satisfy the debt, the Trusts may recover the deficiency from the Seller-Borrower.

"Third, if the market value of the federal securities involved in the repo falls below 102% of the amount the Trusts originally paid to the Seller-Borrower, the latter must immediately deliver cash or additional securities to the Trusts to restore the value of the securities held by the Trusts to 102% of the original payment amount. On the other hand, if the market value of the securities rises above 102% of this amount, the Seller-Borrower may require the Trusts to return some of the securities to the Seller-Borrower. These provisions are consistent with a lender-borrower relationship in which a prudent lender desires to protect the value of its collateral, while a prudent borrower attempts to pledge as little collateral as possible.

"Fourth, the Seller-Borrower may, during the term of the repo, 'substitute' federal securities of equal market value for the federal securities initially

---

[4]Section 3124(a) is the successor statute to another statute (31 U.S.C. former § 742). In 1982, title 31 of the United States Code was reformulated without substantive change. At that time, the prior statute was replaced by section 3124(a). (*American Bank & Trust Co.* v. *Dallas County* (1983) 463 U.S. 855, 859, fn. 1 [77 L.Ed.2d 1072, 1076, 103 S.Ct. 3369].)

involved in the transaction. A lender, of course, is indifferent to the particular collateral pledged by the borrower, so long as that collateral has sufficient value and liquidity." (*Loewenstein, supra,* ___ U.S. at p. ___ [130 L.Ed.2d at p. ___, 115 S.Ct. at p. 563].)

Each of these four features is also present in the master repurchase agreement involved here, and the parties agree that the high court's decision in *Loewenstein* compels the conclusion that section 3124(a) does not prohibit California from taxing dividend income derived from the repurchase agreements involving federal securities in this case.[5]

But plaintiffs Bewleys and the Trust maintain that this conclusion does not resolve this case. They assert that in their complaint they also challenged the tax on the repurchase agreement income on the separate ground that the tax violates the intergovernmental tax immunity doctrine of the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), and that neither the trial court nor the Court of Appeal addressed this challenge. Therefore, plaintiffs argue, this case must be remanded for further proceedings. We agree.

Plaintiffs' complaint may be construed as challenging the imposition of the tax on two grounds: it violated the supremacy clause and it was precluded by section 3124(a). But a review of plaintiffs' motion for summary adjudication, as well as the supporting and opposing points and authorities and declarations, indicates that the motion was based on section 3124(a), and not on the supremacy clause intergovernmental tax immunity doctrine.[6] Also, the trial court's ruling was based solely on section 3124(a). Thus, unless it can be said that the intergovernmental tax immunity doctrine of the supremacy clause is deemed to be coextensive with the preemption provided by section 3124(a), plaintiffs' contention that the tax violates the supremacy clause has not been addressed in the proceedings below.

Although the United States Supreme Court has stated that the statutory exemption is "principally a restatement of the constitutional rule" (*Memphis Bank & Trust Co.* v. *Garner* (1983) 459 U.S. 392, 397 [74 L.Ed.2d 562, 567, 103 S.Ct. 692]; see *First National Bank* v. *Bartow Cty. Tax Assessors, supra,* 470 U.S. 583, 593 [84 L.Ed.2d 535, 544]), the high court's decision in

---

[5]Part of the income received by the Bewleys was derived from the interest paid by the United States government on federal securities owned directly by the Trust and not the subject of repurchase agreements. The parties do not dispute that such dividend income is exempt from state taxation. (*Brown* v. *Franchise Tax Bd., supra,* 197 Cal.App.3d 300, 305-306.)

[6]The Board opposed the motion; it did not itself move for summary judgment or summary adjudication.

*Loewenstein, supra,* __ U.S. __ [130 L.Ed.2d 470, 115 S.Ct. 557], indicates that the scope of the statutory exemption is not necessarily the same as the scope of the intergovernmental tax immunity doctrine.

In *Loewenstein,* the high court treated the taxpayer's challenge to the state tax under the intergovernmental tax immunity doctrine as an issue separate from the challenge to the state tax under section 3124(a). The court divided its opinion into four parts identified by Roman numerals. Parts II and III of the opinion concerned the applicability of section 3124(a). In part IV, the court separately addressed the applicability of the intergovernmental tax immunity doctrine. In this portion of the opinion, the court confirmed the rule it had stated in previous cases (*Rockford Life Ins. Co.* v. *Ill. Dept. of Rev.* (1987) 482 U.S. 182, 190 [96 L.Ed.2d 152, 160, 107 S.Ct. 2312]; *Plummer* v. *Coler* (1900) 178 U.S. 115, 137-138 [44 L.Ed. 998, 1009, 20 S.Ct. 829]), that " ' "when effort is made . . . to establish the unconstitutional character of a particular tax by claiming its remote effect will be to impair the borrowing power of the government, courts . . . ought to have something more substantial to act upon then mere conjecture. The injury ought to be obvious and appreciable." ' " (*Loewenstein, supra,* __ U.S. at p. __ [130 L.Ed.2d at p. __, 115 S.Ct. at p. 566].)

In *Loewenstein,* the court rejected the constitutional challenge to the state tax because the plaintiff taxpayer had failed to show " 'obvious and appreciable' injury to the borrowing power of the United States Government" as a result of the state tax. (*Loewenstein, supra,* __ U.S. at p. __ [130 L.Ed.2d at p. __, 115 S.Ct. at p. 566].) The court then remanded the case for further proceedings. (*Ibid.*)

As we mentioned earlier, here the complaint challenged the tax on the ground that it violated not only section 3124(a), but also the supremacy clause of the United States Constitution. Because this constitutional challenge has not been addressed in the proceedings below, we remand this case to afford the Bewleys and the Trust an opportunity to address this issue.

CONCLUSION

Section 3124(a) does not exempt from state taxation dividend income derived from repurchase agreements involving federal securities. (*Loewenstein, supra,* __ U.S. __ [130 L.Ed.2d 470, 115 S.Ct. 557].) Accordingly, the Court of Appeal erred to the extent that it held that section 3124(a) precluded state taxation of such income. For the reasons set forth above, plaintiffs' constitutional challenge to the tax based on the constitutional doctrine of intergovernmental tax immunity was never resolved and thus needs to be addressed.

The judgment of the Court of Appeal is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.