STEPHEN J. ANDRAS *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 86—0535

Opinion filed March 31, 1987.

Daniel A. Reed, Richard L. Horwitz, and Timothy D. Marshall, all of Drendel, Schanlaber, Horwitz & Tatnall, of Aurora, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Patricia Rosen, and Bret A. Rappaport, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Stephen and Betty Andras (hereinafter referred to as the taxpayers), appeal from a judgment of the circuit court of Kane County which affirmed the decision of the Illinois Department of Revenue concluding that they could not deduct from their gross income for Illinois income tax purposes distributions received by them from the Trust for Short-Term U.S. Government Securities (the Trust). The Trust is also a plaintiff in this appeal.

The facts are not disputed. The Trust was established as a Massachusetts business trust and operates as a regulated investment company, as defined in section 851(a) of the Internal Revenue Code (26 U.S.C. sec. 851(a) (1982)), and commonly known as a mutual fund. Investors buy shares in the Trust through a distributor and receive dividends on those shares on a monthly basis. With the exception of its expenses, the Trust pays out all of its net income to its shareholders in dividends. The Trust invests exclusively in short-term United States government securities, the interest on which is exempted from State taxation by Federal law. (31 U.S.C. sec. 742 (1976)).[1] The Illinois Department of Revenue (hereinafter referred to as the Department) refused to apply the exemption to taxpayers' dividend income, however, finding that the Trust is taxable under Illinois law as a corporation and is therefore a distinct taxable entity which cannot pass its exemptions through to its shareholders unless the pass-through is specifically authorized by statute. In addition, the Department found that certain repurchase agreements involving government securities were in fact loans by the Trust to the sellers and that the interest on them was therefore ordinary rather than tax-exempt income.

There are two issues presented for appeal: (1) whether section 742 of title 31 requires States to exempt from State income taxation dividend income paid to shareholders of mutual funds which pay out their entire net income in dividends on a regular basis, and (2) whether income from the Trust's repurchase agreements involving government securities is tax-exempt.

I

Section 742 (31 U.S.C. sec. 742 (1976)) exempts United States government securities and the interest received on them from State taxation. Plaintiffs argue that, in its decision in *American Bank & Trust Co. v. Dallas County* (1983), 463 U.S. 855, 77 L. Ed. 2d 1072, 103 S. Ct. 3369, the United States Supreme Court held that there are no implied exceptions to section 742—not even the historical distinction between a corporation and its shareholders on which the Department relies.

We will review the history of section 742 and some earlier Supreme Court cases before discussing the *American Bank & Trust* de-

---

[1]Title 31 was reformulated in 1982, and section 742 was replaced by section 3124(a) (31 U.S.C. sec. 3124(a) (1982)), without substantive change. (See *First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 585 n.1, 84 L. Ed. 2d 535, 538 n.1, 105 S. Ct. 1516, 1518 n.1.) Prior section 742 technically controls this case, however, because the tax year involved is 1980.

cision. Two landmark decisions of the Supreme Court established that the constitution necessarily immunizes the Federal government (*McCulloch v. Maryland* (1819), 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579) and obligations of the Federal government from State taxation (*Weston v. City Council* (1829), 27 U. S. (2 Pet.) 449, 7 L. Ed. 481). Section 742 is the most recent in a succession of statutes which codified that constitutional rule. (See *First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 592-93, 84 L. Ed. 2d 535, 543, 105 S. Ct. 1516, 1522; *Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 74 L. Ed. 2d 562, 567, 103 S. Ct. 692, 695; *Society for Savings v. Bowers* (1954), 349 U.S. 143, 144, 99 L. Ed. 950, 955, 75 S. Ct. 607, 608.) The Illinois Supreme Court has acknowledged this as the purpose of section 742. *Rockford Life Insurance Co. v. Department of Revenue* (1986), 112 Ill. 2d 174, 178-79.

In 1866, the Supreme Court decided *Van Allen v. Assessors* (1866), 70 U.S. (3 Wall.) 573, 18 L. Ed. 229, in which taxpayers challenged State taxes imposed on shareholders' interests in several national banks, claiming that the property should be immune from State taxation under the earliest predecessor of section 742. The court stated that a shareholder's interest in a corporation is a "distinct, independent interest or property" not equivalent to the corporation's interest in its assets and concluded that, in any event, the National Bank Act affirmatively authorized States to tax shareholders of national banks. (70 U.S. (3 Wall.) 573, 584-86, 18 L. Ed. 229, 234-35.) In *Cleveland Trust Co. v. Lander* (1902), 184 U.S. 111, 46 L. Ed. 456, 22 S. Ct. 394, the same immunity argument was raised by taxpayers who, like the plaintiffs here, were shareholders in a trust company which had invested in United States government securities. The court again rejected the argument, relying on *Van Allen,* and held that granting the shareholders immunity from State taxation would destroy the distinction between the trust company and its shareholders (184 U.S. 111, 114-15, 46 L. Ed. 456, 458, 22 S. Ct. 394, 395-96) and that applying the immunity rule would put shareholders of a trust in a more advantageous position than shareholders of a national bank (184 U.S. 111, 113, 46 L. Ed. 456, 458, 22 S. Ct. 394, 395.) The *Van Allen* rule was more recently applied in *Society for Savings v. Bowers* (1955), 349 U.S. 143, 147, 99 L. Ed. 950, 957, 75 S. Ct. 607, 609-610, in which the court again concluded that a stockholder's interest was a property interest distinct from the corporation's assets.

Each of the above decisions, however, was decided prior to the 1959 amendment of section 742. Until 1959, the section provided: "[a]ll stocks, bonds, Treasury notes, and other obligations of the

United States, shall be exempt from taxation by or under State or municipal or local authority." (31 U.S.C. sec. 742 (1976).) It was amended in 1959 by the addition of the following language:

"This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." 31 U.S.C. sec. 742 (1976).[2]

In *American Bank & Trust Co. v. Dallas County* (1983), 463 U.S. 855, 77 L. Ed. 2d 1072, 103 S. Ct. 3369, the Supreme Court considered the effect of the additional language on the distinction recognized since *Van Allen* between a State property tax imposed directly on a national bank and one imposed only on its shareholders' interests. The court noted that in addition to the change to the language of section 742, there is no longer any affirmative statutory authorization for a State to tax shareholders' interests in a national bank. (463 U.S. 855, 868, 77 L. Ed. 2d 1072, 1082-83, 103 S. Ct. 3369, 3378.) The court invalidated the tax, holding that the amendment "abolished the formalistic inquiry whether the tax is *on* a distinct interest and replaced it with the inquiry whether 'computation of the tax' requires consideration of federal obligations." (463 U.S. 855, 867, 77 L. Ed. 2d 1072, 1082, 103 S. Ct. 3369, 3377.) The court stated that the new language indicated a congressional intent "to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in the amendment." (463 U.S. 855, 867, 77 L. Ed. 2d 1072, 1082, 103 S. Ct. 3369, 3377.) In discussing *Van Allen, Cleveland Trust,* and *Society for Savings,* the court stated that the prior version of section 742 permitted taxing the shareholders because their interests were "separate from the federal obligations held by the bank." (463 U.S. 855, 871, 77 L. Ed. 2d 1072, 1084, 103 S. Ct. 3369, 3379.) The court noted that the 1959 amendment "abolished the relevance of this formalistic theory." 463 U.S. 855, 872-73 n.14, 77 L. Ed. 2d 1072, 1085 n.14, 103 S. Ct. 3369, 3379-80 n.14.

While we recognize that *American Bank & Trust* and its predecessors involved property rather than income taxes, the Supreme Court stated that section 742 now applies to *all* taxes except those expressly exempted by it. (463 U.S. 855, 867, 77 L. Ed. 2d 1072,

---

[2]The same language is contained in the reformulated statute now at 31 U.S.C. sec. 3124 (1982).

1082, 103 S. Ct. 3369, 3377.) In addition, we are unable to discern any conceptual distinction between the "formalistic theory" distinguishing a shareholder's property interest from the entity's assets (463 U.S. 855, 872-73 n.14, 77 L. Ed. 2d 1072, 1085 n.14, 103 S. Ct. 3369, 3379-80 n.14) and the department's theory that a shareholder's dividend income is distinguishable from the entity's income where, as here, the Trust's *entire* net income is paid regularly to its shareholders. It seems clear that the 1959 amendment to section 742 must also have abolished the relevance of the Department's theory as it applies to tax-exempt dividends issued by the Trust. We find it unnecessary to consider whether the *American Bank & Trust* decision eliminates the distinction between an entity and its shareholders where the entity does not regularly pay out its entire net income in dividends.

■ The parties have argued at length over whether the Illinois or Massachusetts categorization of the nature of the Trust should control this case. The Department contends that since the Trust has characteristics similar to those of a corporation, Illinois may tax it as if it were a corporation, through which deductions cannot pass. We note, however, that where the issue is whether, or to what extent, a Federal right or immunity applies, a State Department of Revenue's categorization of its own tax is not controlling. (See *First Agricultural National Bank v. State Tax Com.* (1968), 392 U.S. 339, 347, 20 L. Ed. 2d 1138, 1144, 88 S. Ct. 2173, 2177; *Society for Savings v. Bowers* (1955), 349 U.S. 143, 151, 99 L. Ed. 950, 959, 75 S. Ct. 607, 611-12.) As discussed above, section 742 is the codification of an immunity from taxation mandated by the United States Constitution. (See, *e.g.*, *Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 74 L. Ed. 2d 562, 567, 103 S. Ct. 692, 695-96.) We therefore conclude that it is irrelevant whether or not the Department appropriately categorized the Trust as a corporation and hold that Illinois may not include in the taxpayers' gross income the dividend income received from the Trust which is attributable to its holdings in United States government securities.

## II

■ Plaintiffs next argue that the Department incorrectly classified the Trust's repurchase agreements as secured loans rather than sales. The transactions are arranged as follows. The Trust agrees to purchase certain United States government securities from a bank or other seller and simultaneously agrees to resell the same securities to the same party on a certain, fixed date, which is generally within a few days of the original sale date. The seller agrees to pay the Trust

interest at a fixed rate for the period between the original sale and the repurchase. The record contains some representative repurchase agreements supplied by the Trust. Some of the agreements refer to the original purchase price as "principal" and to the government securities as "collateral."

Plaintiffs argue that the broad language of section 742 implies that it is irrelevant whether or not the transactions are sales or secured loans, because any tax on the interest received on them would necessarily require the State to consider income from government securities, which is prohibited by section 742 (31 U.S.C. sec. 742 (1976)). We disagree.

In reviewing similar transactions involving municipal bonds, Federal courts have consistently held that the Federal income tax exemption provided for income received from State or municipal obligations (26 U.S.C. sec 103(a) (1982)) is available only to the taxpayer who actually owns the securities—*i.e.*, the taxpayer who has the right to dispose of them and who bears the risk of a profit or loss. (See *American National Bank v. United States* (5th Cir. 1970), 421 F.2d 442, 451 (and cases cited therein).) Plaintiffs have cited no authority holding that section 742 requires immunizing from State taxation the income of anyone other than the owner of Federal government securities, nor have we found any authority supporting plaintiffs' position.

While we recognize that section 742 is a constitutionally mandated immunization from taxation (see, *e.g.*, *Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 74 L. Ed. 2d 562, 567, 103 S. Ct. 692, 695-96) rather than a legislative exemption from a particular tax, the scope of the immunity it affords is not unlimited. In *First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 84 L. Ed. 2d 535, 105 S. Ct. 1516, the Supreme Court held that section 742 did not require a State to permit a bank to deduct the full value of its government securities from its gross assets. The court recognized that, because the bank may have incurred liabilities, the interest on which was also deductible, to acquire the securities, the statute was satisfied by the State's allowing only a *pro rata* deduction from the bank's net worth for the securities. The court concluded that the bank should not be allowed to use Federal obligations to shelter otherwise taxable assets. (470 U.S. 583, 593, 84 L. Ed. 2d 535, 545, 105 S. Ct. 1516, 1523-24.) If the Trust is not the true owner of these securities, but is merely loaning the sellers the securities' purchase price and thereby earning otherwise taxable interest income, we conclude that it may not shelter that income from State taxation by allowing the borrowers to secure the loans with tax-exempt Fed-

44

eral securities.

In determining whether or not a repurchase transaction is actually a loan, Federal courts consider the entire transaction and look to the following specific factors, which, if present, tend to indicate that the transaction is a loan: (1) whether the seller could require the purchaser to resell the securities; (2) whether the purchaser could require the seller to repurchase them; (3) whether the agreement provides either party a specific remedy in the event that the other defaults; (4) whether the seller agreed to pay interest at a stipulated rate between the sale and resale; and (5) whether the amount advanced does not necessarily equal the fair market value of the securities sold. (See *Citizens National Bank v. United States* (Ct. Cl. 1977), 551 F.2d 832, 842.) Other indications of a loan are: (6) whether the identical securities are bought and sold, and (7) whether the purchaser may sell the securities for the seller's account in the event of a default. See I.R.S. Rev. Rul. 74—27, 1974—1 C.B. 24. See also I.R.S. Rev. Rul. 82—144, 1982—2 C.B. 34 (transaction held to be purchase where the purchaser could sell the securities at will); I.R.S. Rev. Rul. 77—59, 1977—1 C.B. 196 (transaction was found to be loan only and the purchaser's assets were found not to be the securities themselves, but the seller's obligation to repay the funds loaned).

■ Here, the Trust and the sellers affirmatively agreed to a repurchase transaction involving the same securities at the time of the sale, and either could therefore properly require the other to perform. And while the agreements do not expressly provide mutual remedies in the event of a default, plaintiffs have stated that the Trust is authorized to sell the securities if the seller defaults. There is no indication that a default sale would relieve the seller of the obligation to pay the agreed amount, and we therefore perceive that such a default sale would only act as a credit against any amount still owed by the seller under the original agreement. In addition, all of the sample agreements clearly set a specific rate of interest.

The Department has not argued that the sale amounts do not accurately reflect the value of the securities, and we will therefore assume that they do. The evidence nevertheless clearly indicates that the Trust accepted none of the risks of ownership, and we therefore conclude that the transactions were secured loans rather than sales. See *American National Bank v. United States* (5th Cir. 1970), 421 F.2d 442, 451.

■ Plaintiffs argue that public policy considerations require that the interest derived from these transactions be considered tax-exempt because they impact so greatly on the Federal security market and

denying the exemption would adversely affect the attractiveness of Federal securities to investors. We note, however, that the Supreme Court rejected that argument in *First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 84 L. Ed. 2d 535, 105 S. Ct. 1516, where, as here, the taxpayers were unable to demonstrate that the impact would be so great as to cause investors to ignore the other advantages of Federal securities, such as their great liquidity and safety (470 U.S. 583, 597, 84 L. Ed. 2d 535, 546, 105 S. Ct. 1516, 1524). The court concluded that "[t]he tax exemption required by the Constitution and [section 742] is not a tax shelter." (470 U.S. 583, 597, 84 L. Ed. 2d 535, 546, 105 S. Ct. 1516, 1524.) We therefore affirm the circuit court's conclusion that income derived by the Trust from these repurchase agreements is not tax-exempt.

The decision of the circuit court is reversed in part, affirmed in part and remanded with directions to permit taxpayers to deduct from their gross income that proportion of the dividends they received from the Trust that is attributable to income from United States government securities, but not the amount attributable to income from repurchase agreements.

Reversed in part, affirmed in part, and remanded.

INGLIS and REINHARD, JJ., concur.