CAPITAL PRESERVATION FUND, INC., a
Wisconsin corporation, Trust For Short Term
U.S. Government Securities, A Massachusetts
business trust, Lee V. Hribar, Urquhart L.
Meeter, Barbara C. Meeter, James E. Bartelt,
Plaintiffs-Respondents,

v.

Wisconsin DEPARTMENT OF REVENUE, and
Karen A. Case, as Secretary of the Wisconsin
Department of Revenue, Defendants-
Appellants.

Court of Appeals

*No. 87–1303. Submitted on briefs June 2, 1988.—Decided July
21, 1988.*

(Also reported in 429 N.W.2d 551.)

For the defendants-appellants the cause was submitted on brief of *Donald J. Hanaway,* attorney general, and *F. Thomas Creeron, III,* assistant attorney general, of Madison.

For the plaintiffs-respondents the cause was submitted on the briefs of *Timothy C. Frautschi* and *Foley & Lardner* of Milwaukee.

Before Eich, Sundby and LaRocque, JJ.

EICH, J. The Wisconsin Department of Revenue appeals from a summary judgment declaring that dividend distributions from the Capital Preservation Fund (the Fund) and the Trust for Short Term U.S. Government Securities (the Trust) are not subject to the Wisconsin income tax. The issue is whether 31 U.S.C., sec. 3124(a), which declares that "obligations of the United States Government are exempt from [State] taxation," precludes Wisconsin from taxing the distributions insofar as they result from: (a) investments in direct obligations of the federal government; and (b) transactions under repurchase agreements involving federal securities.[1] We conclude that the state may not tax any of the investment distributions,

[1]The state also argues that it may tax distributions from the Trust or the Fund resulting from investments in securities which are not direct obligations of the United States, but merely guaranteed by the federal government. The record, however, indicates that all of the investments by both the Trust and the Fund are direct government obligations. Neither entity has any funds invested in "Ginnie Maes" or similar securities not issued, but only guaranteed, by the government. As a result, we do not consider the issue to be before us and we decline to consider it.

842

but that distributions based on income from the Trust's repurchase agreements are taxable. We therefore affirm in part and reverse in part.

The facts are not in dispute, and the case involves only questions of law. We decide such questions *de novo*, without deference to the trial court's resolution of the issues. *Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984).

The Fund and the Trust are mutual "money market" funds. They are diversified investment companies which invest in various types of interest-bearing securities and sell their shares to individual and institutional investors in Wisconsin and elsewhere. They distribute substantially all of the income earned from these investments to their shareholders.

The Fund invests solely in direct obligations of the federal government—U.S. Treasury bills, notes and zero coupon securities. The Trust also invests exclusively in treasury obligations and those of other federal agencies, such as Federal Home Loan Banks. The Trust also enters into "repurchase agreements" through which it purchases government obligations from third parties—normally banks—pursuant to a contract in which the bank agrees to repurchase the obligations from the Trust on a specified date (usually within a day or so of the initial sale to the Trust) and at a set price and rate of interest.

The Fund, the Trust and several investors brought this declaratory judgment action after the department interpreted the Wisconsin income tax statutes as applying to the shareholder distributions. The trial court ruled that such an interpretation violated the provisions of 31 U.S.C. sec. 3124(a), and the department appealed.

The code provision is recognized as a "'restatement of the constitutional rule'" that states may not subject federal instrumentalities to state taxation in the absence of specific congressional consent. *1st Nat. Bank v. Bartow Cty. Assrs.,* 470 U.S. 583, 593 (1985) (citation omitted).[2] It is a "sweeping" exemption and it prohibits taxation "regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 862 (emphasis in original), reh'g denied, 463 U.S. 1250 (1983). We see no way to read 31 U.S.C. sec. 3124(a) other than as a prohibition against state taxation of distributions of income from the Fund's and the Trust's investments. The department argues, however, that *Rockford Life Ins. Co. v. Ill. Dept. of Rev.,* 482 U.S. —, 96 L. Ed. 2d 152 (1987), and a recent decision of this court, *Savings League v. Revenue Dept.,* 141 Wis. 2d 918, 416 N.W.2d 650 (Ct. App. 1987) compel a different result. We disagree.

The issue in *Rockford* was whether income from "Ginnie Maes"—securities issued by private parties, but guaranteed by an arm of the federal government, the Government National Mortgage Association—is subject to state taxation. The Supreme Court held that because the government was only the guarantor of the securities, not the primary obligor, the securities were not "obligations of the United States Government" within the meaning of 31 U.S.C. sec. 3124(a) and thus were not exempt from the taxing power of the states. *Rockford,* 482 U.S. at —, 96 L. Ed. 2d at 159–60. Because we are not dealing with guarantees but with

[2]31 U.S.C. sec. 742 was replaced and reformulated in 1982 by 31 U.S.C. sec. 3124(a).

direct obligations of the federal government, we fail to see *Rockford*'s relevance.

To the extent that the department seizes upon language in *Rockford* to the effect that courts "must proceed carefully when asked to recognize an exemption that Congress has not clearly established," in support of its argument that the 31 U.S.C. sec. 3124(a) exemption should be narrowly construed, we reject that position as well. As we have said, the issue in *Rockford* was the scope of the phrase "obligations of the United States Government," as it appears in the statute; and that term has always been narrowly construed. *See Smith v. Davis,* 323 U.S. 111, 119 (1944). Here, however, the issue is not whether a particular security is a federal "obligation." There is no question that neither the Fund nor the Trust deals in anything but direct obligations of the federal government. The issue before us is the scope of the exemption; and once a security is found to be an "obligation of the United States Government" in the statutory sense, the exemption provided by sec. 3124(a) is, in the words of the United States Supreme Court, to be "broad[ly]" and "sweeping[ly]" construed. *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 395 (1983); *American Bank,* 463 U.S. at 862. And *Rockford,* a case plainly distinguishable from the facts at hand, has not abrogated that rule.

Similarly, we do not see the relevance of *Savings League, supra.* The issue in that case was whether Wisconsin's corporate franchise tax (sec. 71.01(2), Stats.)—a tax on the "privilege of exercising [corporate] franchise[s] ... in this state" which was calculated on the corporation's net income for the previous year—violated 31 U.S.C. sec. 3124(a) to the extent that income earned from federal government obligations

was considered in computing the tax. We answered the question in the negative on the basis that the express language of the code excludes corporate franchise taxes from the prohibition against taxation of federal securities.[3] In so ruling, we were careful to distinguish between franchise and income taxes. In response to the argument that, although designated a franchise tax, the tax at issue in *Savings League* was really a tax on income, we stated:

> There is ... a distinguishing feature between an income tax and a franchise tax ... which the Supreme Court has said saves a true franchise tax from operating as an income tax. If a corporation is dissolved, has ceased operating or has withdrawn from Wisconsin during the tax year, it is not subject to the franchise tax, regardless of the amount of income earned during the year. However, an income tax imposes a tax on income earned in or attributable to Wisconsin business operations regardless of whether the corporation ceases doing business in the state during the tax year. An income tax is levied *on* the income earned by the corporation, while a ... franchise tax is measured *by* the income of the corporation.

*Id.,* 141 Wis. 2d at 924–25, 416 N.W.2d at 652–53 (emphasis in original, footnote omitted). Because the tax in *Savings League* was based on the previous year's Wisconsin income, it would reach that income even if the corporation had gone out of business in the year the return was filed. As a result, we ruled that,

---

[3]31 U.S.C. sec. 3124(a)(1) and (2) exempt "a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation," and estate or inheritance taxes, from the provisions that federal government obligations may not be taxed by states.

despite the fact that it was calculated on income, the tax was on the franchise and thus could be imposed by the state under the franchise tax exception found in 31 U.S.C. sec. 3124(a)(1). The tax at issue in this case is not a corporate franchise tax. It is not a corporate tax at all; it is the personal income tax, and we consider *Savings League* to be beside the point.

█

Because both the Fund and the Trust invest solely in direct obligations of the federal government, distribution to their shareholders (or trustees) of the income from those investments may not be subjected to state income taxation. However, we do not believe the same result obtains with respect to distributions representing interest income to the Trust arising out of its repurchase agreements.

As indicated, from time to time the Trust purchases federal securities from banks pursuant to agreements under which the banks promise to repurchase the securities a short time thereafter at a specified price. The banks also agree to pay the Trust interest at a stated rate for the period between the original sale and the repurchase. The purpose of these short-term transactions is to provide a degree of liquidity to the Trust's investments and thus allow it to meet ongoing requests from its investors to redeem their shares.

The department argues that the interest paid to the Trust in these transactions is not interest on the transferred and retransferred government securities, but rather is the equivalent of interest on the Trust's "loan" to the bank. Courts in at least two states—both involving the same repurchase agreements at issue here—have agreed with that position. In *Andras v. Illinois Dept. of Revenue,* 506 N.E.2d 439 (Ill. App.

1987), *cert. denied,* — U.S. —, 99 L. Ed. 2d 424 (1988), the Illinois Court of Appeals held that the income derived by the Trust from its repurchase agreements was not exempt from state taxation under 31 U.S.C. sec. 3124(a). After summarizing the terms of the agreements, the court stated:

> In reviewing similar transactions involving municipal bonds, Federal courts have consistently held that the Federal income tax exemption provided for income received from State or municipal obligations ... is available only to the taxpayer who actually owns the securities—*i.e.,* the taxpayer who has the right to dispose of them and who bears the risk of a profit or loss. Plaintiffs have cited no authority holding that [the U.S. Code] requires immunizing from State taxation the income of anyone other than the owner of [the] ... securities, nor have we found any authority supporting plaintiffs' position.
>
> ....
>
> The evidence ... clearly indicates that the Trust accepted none of the risks of ownership, and we therefore conclude that the transactions were secured loans rather than sales.
>
> ... We therefore affirm the circuit court's conclusion that income derived by the Trust from these repurchase agreements is not tax-exempt. *Andras,* 506 N.E.2d at 443–44 (citations omitted).

In the other case, *In re Sawyer's Estate,* 546 A.2d 784, 786 (Vt. 1987), the Vermont Supreme Court held:

> While the repurchasing agreements nominally involve federal obligations, the profits derived

therefrom are not interest income attributable to the federal obligations.

When holding federal obligations as part of a repurchase agreement, the Trust holds them, in essence, as security for a loan to the original purchaser of the ... obligations. ... The income gained by the Trust from these arrangements is ... interest income on the loan the Trust provides the seller, rather than interest income derived from the federal obligation and is not exempt from state taxation under [31 U.S.C.] sec. 3124(a) (citation omitted).

■

The Trust has referred us to a Michigan case, *Matz v. Department of Treasury,* 401 N.W.2d 62, 63 (Mich. 1986), in which the court quoted a statement from a Michigan Tax Tribunal ruling to the effect that the Trust's repurchase agreements "do not change the character of the security as a United States Government security." We find the reasoning of the Vermont and Illinois courts far more persuasive on the issue than the Michigan court's unexplained *per curiam* quotation from a state agency ruling. We hold, therefore, that 31 U.S.C. sec. 3124(a) does not exempt distributions based on interest income derived from the Trust's repurchase agreements from state taxation.

We thus reverse the judgment insofar as it declares such income exempt from the Wisconsin income tax under 31 U.S.C. sec. 3124(a). In all other respects, we affirm the trial court.

*By the Court.*—Judgment affirmed in part and reversed in part.

SUNDBY, J. (*dissenting*). Since *M'Culloch v. Maryland,* 4 Wheat. 316, 4 L. Ed. 579 (1819), the United States Supreme Court has adhered to the rule that states may neither impose taxes directly on the federal government, nor impose taxes the legal incidence of which falls on the federal government. *United States v. County of Fresno,* 429 U.S. 452, 459 (1977). Because I conclude that sec. 71.05(1)(a), Stats., does not impose a tax the legal incidence of which falls on the federal government, I dissent from that part of the majority opinion which affirms the judgment declaring the statute unconstitutional.

Section 71.05(1)(a), Stats., imposes a state income tax on corporate dividends paid to investor shareholders. Section 71.05(1)(b)1 excludes from state income tax "[t]he amount of any interest or dividend income, less related expenses, which is by federal law exempt from taxation by this state."

31 U.S.C. sec. 3124 provides:

> (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—
> (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
> (2) an estate or inheritance tax.

Section 31 U.S.C. 3124 is a revision and recodification of Rev. Stat. sec. 3701, as amended, 31 U.S.C. sec. 742 (1976).

Rev. Stat. sec. 3701, as amended, provided:

> [A]ll stocks, bonds, Treasury notes and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interests thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except state taxes or inheritance taxes.

The last sentence of sec. 3701 was added in 1959. Pub. L. 86–346, sec. 105(a), 73 Stat. 622. Title 31 of the United States Code was not enacted into positive law until 1982, when it was reformulated, "without substantive change." See Pub. L. 97–258, sec. 4(a), 96 Stat. 1067. Decisions construing Rev. Stat. sec. 3701, as amended, are therefore binding authority in the construction of 31 U.S.C. sec. 3124 (1982).

The United States Supreme Court consistently has "treated [sec. 3701] as principally a restatement of the constitutional rule [of immunity]." *1st Nat. Bank v. Bartow Cty. Assrs.,* 470 U.S. 583, 593 (1985), quoting *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 397 (1983).

The 1959 addition to sec. 3701 did not broaden the scope of the exemption beyond that mandated by the constitution, as interpreted in previous decisions of the Court. *Bartow Cty. Assrs.,* 470 U.S. at 593. In *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, reh'g denied, 463 U.S. 1250 (1983), the Court stated that the exemption for federal obligations provided by sec. 3701, as amended is "sweeping[,] with specific exceptions, it 'extends to *every form* of taxation that would require that either the obligations or

the interest thereon, or both, *be considered, directly or indirectly, in the computation* of the tax' (emphasis supplied)." *Id.* at 862, citing *Memphis Bank & Trust Co. v. Garner,* 459 U.S. at 395–96, where the Court also stated that the statute "establishes a broad exemption."

The *American Bank* court said further:

Under the plain language of the 1959 amendment ... the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax.

*Id.* at 862. (Emphasis in original.)

*American Bank* involved a Texas property tax on bank shares. The tax was computed by use of an "equity capital formula," which involved determining the amount of the bank's capital assets, subtracting from that figure the bank's liabilities and the assessed value of the bank's real estate, and then dividing the result by the number of shares.

The Court said that such a tax took into account, at least indirectly, the federal obligations that constituted a part of the bank's assets. "Giving the words of amended sec. 3701 their ordinary meaning, there can be no question that federal obligations were considered in computing the bank's shares tax at issue here. In context, the word 'considered' means taking into account, or included in the accounting." *Id.* Because "[s]ec. 3701 prohibits any form of tax that would require consideration of federal obligations in computing the tax," *id.* at 865, the Court held that the bank shares tax violated the plain language of sec. 3701.

The question involved on this appeal is whether the tax imposed by sec. 71.05(1)(a), Stats., requires consideration of federal obligations or the interest

thereon in computing the tax. I conclude that it does not.

The dividends to shareholders consist of interest earned on federal obligations. Administrative expenses, including management fees, are, however, deducted from the interest income. Thus, any identity between that income and the dividends has been lost by the time the dividends are distributed. The tax levied under sec. 71.05(1)(a), Stats., is computed on the amount of dividend reported by the taxpayer and not on the interest earned on the federal obligations. I therefore conclude that the tax imposed by sec. 71.05(1)(a) does not violate 31 U.S.C. 3124 or the supremacy or borrowing clauses of the federal constitution.