JOHN LOEWENSTEIN, APPELLEE, V. STATE OF NEBRASKA,
DEPARTMENT OF REVENUE, APPELLANT.

504 N.W.2d 800

Filed August 27, 1993.   No. S-91-255.

Don Stenberg, Attorney General, and David Edward Cygan for appellant.

Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

WHITE, J.

The Department of Revenue of the State of Nebraska (Department) appeals the decision of the district court for Lancaster County that Department of Revenue Ruling 22-85-1 violates 31 U.S.C. § 3124 (1988) and the Supremacy Clause of the U.S. Constitution.

The controversy in this case arose out of the State's taxation of income the appellee, John Loewenstein, received from

investments in mutual funds. The appellee, a Nebraska resident, owned shares in two mutual funds, the Trust for Short-Term U.S. Government Securities and the Trust for U.S. Treasury Obligations (trusts). These trusts invested exclusively in U.S. government securities either directly or through repurchase agreements. Pursuant to Revenue Ruling 22-85-1, Loewenstein was required to pay state income taxes on the interest income he received from the repurchase agreements executed by the trusts involving federal securities. Revenue Ruling 22-85-1 provides in part:

A repurchase agreement is essentially a short-term loan, bearing interest at a specified rate, whereby an owner of government or agency securities obtains funds from a customer, a financial institution, or a broker/dealer. The loan is secured by certain Treasury Bills or other obligations of the federal government owned by the borrower. The terms of the repurchase agreement generally provide for the sale of the securities with a prompt repurchase by the owner. The party providing the funds does not receive the actual federal government obligations securing the investment, but does receive a collateral receipt identifying the securities pledged to or sold to the party providing the funds. The risk of ownership and title to the securities does not shift from the operator of a repurchase pool to the investor providing short-term funds. The interest earned on the United States government obligations remains the income of the owner who submitted the securities as collateral for the loan.

The interest income received from repurchase agreements involving obligations of the United States government is income to the investor who provides the funds as a loan secured by government securities. This interest income which is received from repurchase agreements involving obligations of the United States government is subject to the Nebraska individual income tax. It is not to be subtracted from a taxpayer's federal taxable income on the Nebraska return.

In May 1988, Loewenstein filed a declaratory judgment action under the Administrative Procedure Act, in the district

court for Lancaster County, asking that Department of Revenue Ruling 22-87-4 be declared invalid pursuant to § 3124 and that the income received by Loewenstein from the trusts be declared exempt from state taxation. See Neb. Rev. Stat. § 84-911 (Reissue 1987). Thereafter, the parties jointly filed a motion to amend the pleadings to include a request for a ruling on the validity of Revenue Ruling 22-85-1. The district court found that both rulings violate § 3124 and the Supremacy Clause of the U.S. Constitution and, therefore, declared them void. The Department appeals the district court's decision, but only with respect to Revenue Ruling 22-85-1.

The Department asserts that the district court erred in determining that the income from repurchase agreements for obligations of the United States constitutes interest or a dividend received by the owner of obligations of the United States and in concluding that Revenue Ruling 22-85-1 is violative of the Supremacy Clause of the U.S. Constitution, § 3124, and Neb. Rev. Stat. § 77-2716(1)(a) (Cum. Supp. 1988). The Department's assignments of error present the following issue: whether § 3124, which provides that federal securities are exempt from state taxation, precludes Nebraska from taxing the income received by Loewenstein from the trusts' investment in federal securities using repurchase, or repo, agreements. We conclude that this income is exempt from state taxation under § 3124 and accordingly affirm the district court's judgment invalidating Revenue Ruling 22-85-1.

The standard of review on appeal from a declaratory judgment action filed under the Administrative Procedure Act in the district court prior to July 1, 1989, is de novo on the record. See Neb. Rev. Stat. § 84-918(2) (Cum. Supp. 1992). Since the issue in this case is a question of law, we must reach a conclusion independent from the one made by the trial court. *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993).

The facts in this case are undisputed. At trial, the parties jointly introduced into evidence two stipulations. The pertinent facts stated in the second stipulation are as follows:

> 1. The Trust[s] . . . are no-load, open-end, diversified investment companies whose primary objective is to

receive current income from ownership of U.S. Government securities and obligations, either directly or through the use of repurchase agreements.

2. The Trusts do not engage in any other business.

3. The Trusts are qualified as regulated investment companies under Internal Revenue Code Subchapter M and are established under the Investment Company Act of 1940.

. . . .

5. The Trusts make U.S. Government securities accessible to investors in much smaller denominations than sold in the marketplace and provide a distribution of the risk through a diversified portfolio of U.S. Government securities.

6. The Trusts invest in short-term securities and obligations of the U.S. Government and its agencies and instrumentalities either directly or through repurchase agreements. The Trusts hold no other securities.

. . . .

10. A standard repurchase agreement ("repo") consists of a two-part transaction.

11. The first part consists of the transfer of specified securities by the seller to the buyer, in exchange for cash.

12. The second part consists of the contemporaneous agreement by the seller to repurchase the securities at the original sale price, plus an agreed . upon amount of "interest," paid on a specified future date (the "Maturity Date").

13. Actual delivery is taken of the securities through the Federal Reserve book entry system.

14. There is no separate promissory note executed in connection with the repurchase agreement.

15. The repurchase price of the government securities subject to a repo is typically less than the market value of the securities.

. . . .

18. The repurchase price of the securities is equal to the original sale price, plus the negotiated interest.

19. The interest paid by the seller upon repurchase is less

than the interest rate accruing on the purchased securities.

The first stipulation included the depositions of Stewart Brown, a financial analyst and university professor, and Peter Sternlight, executive vice president of the Federal Reserve Bank of New York. These depositions were not conducted by counsel in this case, but, rather, by counsel litigating a case, Page v. Department of Revenue, State of Florida, No. CI 87-2586, in the Circuit Court of the Ninth Judicial Circuit, Orange County, Florida. The parties in Page v. Department of Revenue, State of Florida, litigated the same issue that we must address in this case.

Sternlight's testimony stated that repurchase agreements involving federal securities are essential to the efficient functioning of the government securities markets. He stated that repo agreements are an important method for dealers to finance their inventories of federal securities and that primary dealers underwrite 35 to 75 percent of new federal securities. Sternlight testified that an impairment of the repo market would make it less attractive for dealers to underwrite federal securities, thus adding to Treasury interest costs. Sternlight characterized repurchase transactions as the purchase and sale of securities. However, Sternlight admitted on cross-examination that repurchase transactions are very similar to collateralized loans. In addition, he stated that the function of the Federal Reserve to make short-term adjustments in the nation's money supply would be more difficult without repurchase agreements and that the Federal Reserve would not be authorized by law to use repurchase agreements if they were characterized as collateralized loans.

Brown's testimony supports Revenue Ruling 22-85-1. Brown testified that the economic substance of a repurchase transaction is a secured loan. Brown also stated that the Federal Reserve could still conduct open-market operations in essentially the same way without repurchase agreements.

The Department also introduced into evidence the affidavit of Donald O. Ellingson, tax law manager in the tax policy division of the Department. In his affidavit, Ellingson provided an analysis of a typical federal securities repurchase transaction between a mutual fund and a bank, the broker-dealer, based on

a repo agreement identical to the one utilized by the trusts. Ellingson concluded that the income from the repo transaction was not exempt from state taxation. His conclusion was based on the same rationale applied in Revenue Ruling 22-85-1, that is, the characterization of the transaction as a loan rather than a sale.

Before we discuss the validity of Revenue Ruling 22-85-1 and the state tax authorized therein, it is helpful to briefly describe the state and federal statutory provisions which prohibit state taxation of income earned by Nebraska residents from investments in federal securities. Under Neb. Rev. Stat. § 77-2715(2) (Cum. Supp. 1988), a taxpayer is required to pay state income tax on his or her federal adjusted gross income as modified by § 77-2716. In accordance with § 77-2716(1)(a), a taxpayer may subtract from his or her federal adjusted gross income all interest or dividend distributions from obligations of the United States which are exempt from state income taxes under the laws of the United States. The federal law which exempts such interest distributions from state taxation is § 3124. This section provides:

> **Exemption from taxation**
>
> (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax . . . .

Section 3124 is a revision and recodification of 31 U.S.C. § 742 (1976). In § 742, the last sentence from the quote above read as follows: "This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, *directly or indirectly*, in the computation of the tax . . . ." (Emphasis supplied.) See Act of Sept. 22, 1959, Pub. L. No. 86-346, § 105(a), 73 Stat. 621, 622. When Congress recodified § 742 as § 3124, the words "directly or indirectly" were omitted as surplus. H.R. Rep. No. 97-651, 97th Cong., 2d Sess. 94, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1895, 1988. It was the intention of Congress to reformulate § 742 without a substantive change. See Act of Sept. 13, 1982, Pub. L. No. 97-258, § 4(a), 96 Stat. 877, 1067.

See Act of Sept. 13, 1982, Pub. L. No. 97-258, § 4(a), 96 Stat. 877, 1067.

Since the recodification did not substantively change the statute, the U.S. Supreme Court's construction of § 742 is also binding authority in the construction of § 3124. The Court has " 'treated [§ 742] as principally a restatement of the constitutional rule [that federal government property is immune from state taxation].' " *First National Bank v. Bartow Cty. Tax Assessors*, 470 U.S. 583, 593, 105 S. Ct. 1516, 84 L. Ed. 2d 535 (1985), quoting *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 103 S. Ct. 692, 74 L. Ed. 2d 562 (1983). The Court has interpreted the exemption for federal securities provided in § 742 as a "sweeping" and "broad" exemption. See, *American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 103 S. Ct. 3369, 77 L. Ed. 2d 1072 (1983); *Memphis Bank & Trust Co. v. Garner, supra*. This exemption is intended " 'to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit.' " *Memphis Bank & Trust Co. v. Garner*, 459 U.S. at 396, quoting *Smith v. Davis*, 323 U.S. 111, 65 S. Ct. 157, 89 L. Ed. 107 (1944). However, the Court has also stated that the tax exemption provided by § 742 is not a tax shelter. *First National Bank v. Bartow Cty. Tax Assessors, supra*.

The trusts invest in federal securities in two ways. In the first method, "direct purchase and sale," the trusts purchase federal securities without any restrictions on them, hold them for an indeterminate period of time, then either collect the interest from the federal government on those obligations when they mature or sell them at a later date prior to maturity. When the interest income from such a transaction is passed on to the shareholders of the trusts, it is exempt from state taxation under § 3124. See, *American Bank & Trust Co. v. Dallas County, supra*; *Memphis Bank & Trust Co. v. Garner, supra*; *Brown v. Franchise Tax Bd.*, 197 Cal. App. 3d 300, 242 Cal. Rptr. 810 (1987). The second method of investment used by the trusts is to purchase federal securities and simultaneously enter into a repurchase agreement, agreeing to resell the obligations back to the seller at a specified date and price. The dispute in this case

involves the state's taxation of the income which the trusts' shareholders receive from these repurchase transactions.

The Department argues that the trusts' repo transactions were really collateralized loans, whereby the trusts did not *own* the federal securities, but, rather, took the U.S. obligations as *security* for a short-term loan to the seller of the securities, a broker-dealer. Therefore, the income earned by the trusts (and subsequent income distributions by the trusts to their shareholders) from a repurchase transaction constituted interest payments on a loan and not interest income from the sale of federal securities. The Department further asserts that this loan was the obligation of the second party (a private party) to the repo agreement, not the obligation of the federal government. The Department concludes that since the income received by the shareholders constituted interest payments from a private party on a loan, a state tax on such income did not involve the consideration of a U.S. obligation, or the interest thereon, in computing the tax. Thus, the subject income is not tax-exempt under § 3124.

The issue in this case is one of first impression for this court. Yet, there are a few jurisdictions which have addressed this issue and have determined that the income from a repo transaction involving federal securities is not exempt from state taxation. See, *Hammond Lead Products v. Tax Com'rs*, 575 N.E.2d 998 (Ind. 1991); *Department of Revenue v. Page*, 541 So. 2d 1270 (Fla. App. 1989); *Capital Preservation v. Rev. Dept.*, 145 Wis. 2d 841, 429 N.W.2d 551 (Wis. App. 1988); *Andras v. Department of Revenue*, 154 Ill. App. 3d 37, 506 N.E.2d 439 (1987). See, also, *Union Planters Nat. Bank of Memphis v. United States*, 426 F.2d 115 (6th Cir. 1970); *American National Bank of Austin v. United States*, 421 F.2d 442 (5th Cir. 1970) (income from repo transactions involving municipal bonds not exempt from federal taxation). These courts apply a rationale similar to that proposed by the Department. That is, in a repo transaction, the seller-repurchaser (i.e., the broker-dealer) is the party who has the rights and risks associated with ownership of the securities, and as the true owner of the securities, the seller-repurchaser is the only party in the transaction who can claim the tax exemption provided by § 3124. *Hammond Lead*

*Products v. Tax Com'rs, supra; Department of Revenue v. Page, supra; Capital Preservation v. Rev. Dept., supra; Andras v. Department of Revenue, supra.* The rationale applied by these courts in determining whether a mutual fund shareholder's income from a repo transaction is exempt under § 3124 is based entirely on whether that party is deemed the true, or direct, owner of the securities.

We do not believe that direct ownership determines whether income from a repo agreement is exempt under § 3124. The U.S. Supreme Court stated that the long-established congressional intent of § 3124 is to prevent state taxes which diminish in the *slightest degree* the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit. See *Smith v. Davis, supra.* Also, because § 742 was recodified without substantive change, § 3124 still exempts from state taxation those federal obligations, and interest thereon, which are directly and *indirectly* considered in computation of the tax. Furthermore, the Court has interpreted this exemption as "broad" and "sweeping." See, *American Bank & Trust Co. v. Dallas County, supra; Memphis Bank & Trust Co. v. Garner, supra.* Thus, the income received by the appellee in this case, at the very least, is considered indirectly in computation of the tax. In addition, the state tax clearly imposes a burden on the market for federal securities. A review of the expert testimony of Sternlight makes it clear that a state tax on such income would diminish the market value and the investment attractiveness of federal securities, that the tax would impose a burden on the federal government's regulation of the nation's money supply, and that such tax would increase the costs to the federal government in financing the national debt.

We conclude that the rationale and decision in Revenue Ruling 22-85-1 are invalid and that the income received by the appellee from repo transactions executed by the trusts involving federal securities is exempt from state taxation under § 3124. We thus affirm the district court's judgment with respect to Revenue Ruling 22-85-1.

AFFIRMED.

HASTINGS, C.J., not participating.

CAPORALE, J., dissenting.

I dissent; for when stripped to their essence, the transactions in question are nothing more than ones in which the plaintiff-appellee, John Loewenstein, participated as a lender in loans secured by various governmental obligations. Therefore, state taxation of the income Loewenstein earned through those participations is not precluded by the Supremacy Clause of the U.S. Constitution through the provisions of 31 U.S.C. § 3124 (1988), and Nebraska Department of Revenue Ruling 22-85-1, issued by the defendant-appellant, State of Nebraska, Department of Revenue, is valid.

Loewenstein is an investor in funds operated by Massachusetts Business Trusts, a regulated investment company as defined in the Internal Revenue Code, I.R.C. § 851(a) (1988), which funds are commonly known as mutual funds. Under the "General Repurchase Agreement" which controls the transactions in question, a seller of governmental securities to the trusts is obligated to repurchase them by a fixed date, and the trusts are obligated to resell them at a fixed price. In exchange, the trusts receive a fixed rate of return which bears no relationship either to the value of the securities which make up the trusts' funds or to the income the securities produce for the seller, or more accurately, the seller-repurchaser. In short, the seller-repurchaser bears the entire market risk. Moreover, until the repurchase date, the seller-repurchaser has the right to substitute one governmental security for another. Further, the seller-repurchaser and the trusts each have remedies against the other in the event of a default in the respective obligations of either.

Nine of the 10 other appellate courts which have considered this issue have held that under such circumstances, the income to the investors is subject to state taxation: *Hammond Lead Products v. Tax Com'rs*, 575 N.E.2d 998 (Ind. 1991); *Everett v. Dept. of Revenue and Finance*, 470 N.W.2d 13 (Iowa 1991); *Comptroller v. First United Bank*, 320 Md. 352, 578 A.2d 192 (1990); *Borg v. Dept. of Rev.*, 308 Or. 34, 774 P.2d 1099 (1989); *Department of Revenue v. Page*, 541 So. 2d 1270 (Fla. App. 1989); *Massman Const. v. Director of Revenue*, 765 S.W.2d 592 (Mo. 1989); *Capital Preservation v. Rev. Dept.*, 145 Wis. 2d

841, 429 N.W.2d 551 (Wis. App. 1988); *In re Sawyer Estate*, 149 Vt. 541, 546 A.2d 784 (1987); *Andras v. Department of Revenue*, 154 Ill. App. 3d 37, 506 N.E.2d 439 (1987), *cert. denied* 485 U.S. 960, 108 S. Ct. 1223, 99 L. Ed. 2d 424 (1988). The only decision other than that of the majority holding to the contrary is that of an intermediate court of appeals in *Matz v Dep't of Treasury*, 155 Mich. App. 778, 401 N.W.2d 62 (1986). However, the *Matz* court was construing a state statute defining ownership.

While the fact that nine other courts have reached a contrary result to that reached by the majority is not, in and of itself, particularly persuasive, the reasoning illustrated by *Andras v. Department of Revenue*, 154 Ill. App. 3d at 43-44, 506 N.E.2d at 443-44, is:

> In reviewing similar transactions involving municipal bonds, Federal courts have consistently held that the Federal income tax exemption provided for income received from State or municipal obligations (26 U.S.C. sec 103(a) (1982)) is available only to the taxpayer who actually owns the securities—*i.e.*, the taxpayer who has the right to dispose of them and who bears the risk of a profit or loss. (See *American National Bank v. United States* (5th Cir. 1970), 421 F.2d 442, 451 (and cases cited therein).) Plaintiffs have cited no authority holding that section 742 requires immunizing from State taxation the income of anyone other than the owner of Federal government securities, nor have we found any authority supporting plaintiffs' position.
>
> While we recognize that section 742 is a constitutionally mandated immunization from taxation (see, *e.g., Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 74 L. Ed. 2d 562, 567, 103 S. Ct. 692, 695-96) rather than a legislative exemption from a particular tax, the scope of the immunity it affords is not unlimited. In *First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 84 L. Ed. 2d 535, 105 S. Ct. 1516, the Supreme Court held that section 742 did not require a State to permit a bank to deduct the full value of its government securities from its gross assets. The court

recognized that, because the bank may have incurred liabilities, the interest on which was also deductible, to acquire the securities, the statute was satisfied by the State's allowing only a *pro rata* deduction from the bank's net worth for the securities. The court concluded that the bank should not be allowed to use Federal obligations to shelter otherwise taxable assets. (470 U.S. 583, 593, 84 L. Ed. 2d 535, 545, 105 S. Ct. 1516, 1523-24.) If the Trust is not the true owner of these securities, but is merely loaning the sellers the securities' purchase price and thereby earning otherwise taxable interest income, we conclude that it may not shelter that income from State taxation by allowing the borrowers to secure the loans with tax-exempt Federal securities.

In determining whether or not a repurchase transaction is actually a loan, Federal courts consider the entire transaction and look to the following specific factors, which, if present, tend to indicate that the transaction is a loan: (1) whether the seller could require the purchaser to resell the securities; (2) whether the purchaser could require the seller to repurchase them; (3) whether the agreement provides either party a specific remedy in the event that the other defaults; (4) whether the seller agreed to pay interest at a stipulated rate between the sale and resale; and (5) whether the amount advanced does not necessarily equal the fair market value of the securities sold. (See *Citizens National Bank v. United States* (Ct. Cl. 1977), 551 F.2d 832, 842.) Other indications of a loan are: (6) whether the identical securities are bought and sold, and (7) whether the purchaser may sell the securities for the seller's account in the event of a default. See I.R.S. Rev. Rul. 74-27, 1974-1 C.B. 24. See also I.R.S. Rev. Rul. 82-144, 1982-2 C.B. 34 (transaction held to be purchase where the purchaser could sell the securities at will); I.R.S. Rev. Rul. 77-59, 1977-1 C.B. 196 (transaction was found to be loan only and the purchaser's assets were found not to be the securities themselves, but the seller's obligation to repay the funds loaned).

Loewenstein argues that repurchase agreements are essential

in order to allow the Federal Reserve to adjust the nation's money supply and points to 12 C.F.R. § 32.103(a) (1993), which provides that U.S. Treasury notes subject to a repurchase agreement do not constitute a loan or the extension of credit. However, as noted in *Hammond Lead Products v. Tax Com'rs, supra*, that regulation relates to commercial banks and the general scheme of lending limits; it has no bearing on the Internal Revenue Code or the judicial interpretation of repurchase agreements.

Loewenstein also argues that repurchase agreements are necessary to increase the liquidity of mutual funds dealing in government obligations in order to satisfy those investors who wish to avoid inflexible terms in their investments. But government securities are, in and of themselves, very liquid; they can be sold readily, albeit with some short-term market risk. Also, a mutual fund could achieve even greater liquidity by borrowing against the government securities it holds. And a fund could also enhance its liquidity by diversifying the maturity dates of the government securities it acquires. The point is that there are other means to achieve liquidity without the use of repurchase agreements, which take exposure to market risks and other incidents of ownership away from the investor and give them to the seller-repurchaser.

As stated in *Everett v. Dept. of Revenue and Finance*, 470 N.W.2d 13, 15 (Iowa 1991):

> The State's tax did not consider, either directly or indirectly, the federal obligations or the interest paid on them in calculating the Everetts' tax. Instead, the tax was based on the interest paid by private seller-repurchasers pursuant to a private sector loan agreement in which federal obligations served as collateral. In such a situation, neither the federal obligations nor the interest thereon is considered in calculating the state income tax. *Borg*, 308 Or. at 38-39, 774 P.2d at 1102; *In re Thomas Sawyer Estate*, 546 A.2d at 786. We hold that neither the supremacy clause nor 31 U.S.C. section 3124(a) prevents the State from taxing the income derived from the repurchase agreements.

Accordingly, I would reverse the judgment of the district

court and remand the cause with the direction that the district court declare Revenue Ruling 22-85-1 to be valid.

GRANT, J., Retired, joins in this dissent.